**UNITED STATES of America,**

v.

**Lowell M. BIRRELL, Defendant.**

United States District Court
S. D. New York.

July 1, 1965.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for

United States of America; Paul R. Grand, Thomas J. Cahill, Asst. U. S. Attys., of counsel.

William B. Pennell, Menahem Stim, New York City, for defendant.

WYATT, District Judge.

By orders filed June 11, D.C., 242 F. Supp. 191 and 25, D.C., 243 F.Supp. 36, 1965, the motion of defendant Birrell under Fed.R.Crim.P. 41(e) was decided except (1) as to those papers obtained by the District Attorney of New York County on July 24, 1959 and (2) as to whether there was any reason why the records, or any part, should not be returned to movant Birrell.

The parties were heard as to these two matters on June 28, 1965. At that time George C. Levin, Esq., Trustee in Chapter X Reorganization Proceedings of Swan-Finch Oil Corporation and Edward C. Kalaidjian, Esq., attorney for the Trustee in Chapter X Reorganization Proceedings of Equitable Plan Company were also heard on the matter referred to as (2) above.

1.

There was little, if any, dispute as to the facts of the July 24, 1959 incident.

A grand jury for New York County had returned an indictment against Birrell and was continuing its investigation.

In some manner, Assistant District Attorney Hallisey learned that Joseph A. De Risi, a bookkeeper living in Teaneck, New Jersey, knew something about the books and records of Birrell and of corporations with which Birrell had been connected.

Sometime shortly after July 15, 1959, Hallisey asked the Teaneck Police Department to secure a statement from De Risi about the records. Lieutenant Morgan of the Teaneck Police then telephoned De Risi at his home between nine and ten at night and asked him to come to the Police Department. De Risi went and, after questioning by Morgan, signed a statement prepared by Morgan. (This statement must have been then forwarded to Hallisey.)

Hallisey then telephoned De Risi in Teaneck and asked him if he would come in to the District Attorney's office. De Risi agreed to do so on July 23, 1959. On the morning of that day De Risi became ill and telephoned Morgan, asking Morgan to make his excuses with the New York County District Attorney.

De Risi testified that Hallisey called him shortly thereafter and asked why he was not coming in, that he (De Risi) replied that he was ill, that Hallisey said if De Risi did not come in they would come over (presumably to Teaneck) and bring him in "by the scruff of the neck", that he replied that they could do so but should bring a container as he was very nauseated, that Hallisey then asked if he would come in the next day, and that he agreed to do so.

The next day—July 24, 1959—De Risi went in the morning to the office of Hallisey in New York and there apparently talked freely about his employment and whatever else about which Hallisey asked.

It developed that De Risi had been employed at one time either by Birrell or by corporations in which Birrell was interested. It is clear that De Risi was not employed by Birrell on July 24, 1959.

In July 1959 and before then, De Risi was and had been keeping the books of six corporations: Bucks County Farms, Inc., Echo Falls Farms, Inc., Oil Development Management Co., William Penn Fire Insurance Co., Buxmont Co., and Exco Co. These were corporations in which Birrell had been or was then interested. Except for Bucks County Farms, Inc., these corporations were inactive in 1959 and only a minimum of bookkeeping needed to be done. De Risi did his bookkeeping work in the garage-office of Jonathan Dunn, an attorney for Birrell, on Sugar Bottom Road, Furlong, Bucks County, Pennsylvania, where the books and records were kept. He had free access to the premises, had a key to the garage-office, came and went as he pleased to work on the books and records. Apparently this work was not full time.

It appears that for Federal withholding tax purposes, Dunn reported as the

employer of De Risi for his work for the six corporations and De Risi was paid by personal check of Dunn. This does not exclude that De Risi was in fact employed by the corporations for the work done for them.

De Risi had been an officer of the six corporations and when he talked to Hallisey believed that he still was an officer of those corporations. From what De Risi told him, Hallisey reasonably believed that De Risi was such an officer.

De Risi testified at this hearing, however, that he had resigned as an officer of the corporations in 1957 at the direction of Birrell. At least as to Bucks County Farms, Inc., De Risi continued to act as an officer after his resignation.

Dunn was an officer of the six corporations in July 1959.

During his talk with Hallisey, De Risi told Hallisey that he wanted to cooperate with the District Attorney's office. Hallisey asked him if he would turn over the records of the six corporations whose books he was keeping and of which Hallisey believed him to be an officer. De Risi said that he would but wanted to be sure he had some protection from criticism—whether from Dunn, Birrell, or from others I cannot be sure. At any rate, Hallisey issued and gave to De Risi a subpoena duces tecum requiring him to appear "forthwith" before the Grand Jury with "all books and records, including * * * of the six corporations. Hallisey said that he would send a Police Detective in a car with De Risi to pick up the records. De Risi stated that he was leaving that afternoon by car to visit his daughter. Hallisey said he would be later in leaving than he (De Risi) had expected, because of the ride to get the records. De Risi then called his wife and explained why he would be late.

De Risi was then driven by the Detective to the Dunn garage-office in Pennsylvania. There De Risi let himself in with his key, picked out—from among the numerous other records already considered on this motion—the records of the six corporations, and gave them to the Detective. De Risi was then dropped off at his home by the Detective, who continued on with the records to the District Attorney's office.

No officer of the federal government had anything to do with the obtaining of the records by the District Attorney of New York County.

The records were not submitted to the New York County Grand Jury.

On November 29, 1961, the records of the six corporations were voluntarily turned over by the New York County District Attorney to the United States Attorney. Apparently the understanding arrived at orally was that the records would be returned on request and this is reflected in the written receipts on a printed form. No such request has ever been made, and the District Attorney of New York County has no present intention of using the records.

■ On these facts, it is clear to me: (a) that the District Attorney of New York County used no process (subpoena, search warrant or otherwise), no threats, coercion, intimidation or the like to obtain the records; (b) that De Risi voluntarily turned over the records; and (c) that no Federal officer had anything whatever to do with the events of July 24, 1959.

The subpoena issued was so issued at the suggestion and for the benefit of De Risi, not the District Attorney. That it was limited to the corporations of which De Risi was believed by him and by Hallisey then to be an officer is indicative of good faith, rather than otherwise. De Risi might properly turn over records only of those corporations for which he had authority to act, and restriction of the subpoena to what were believed to be such corporations shows commendable restraint. Strong proof of the voluntary character of De Risi's action is the fact that he came from New Jersey to New York without process of any kind, and indeed no process could have compelled him to do so. The telephone threat to bring him "by the scruff of the neck" means little; in fact, Hallisey did not do so and obviously did not mean to do so because De Risi did not come in to New York on

July 23 but rather Hallisey accepted his agreement to come in on July 24, voluntarily as it seems to me.

The use of a key by De Risi to secure the records is entirely unlike Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). De Risi obtained his key from the owner of the premises and had access by permission of the owner.

The only case cited for movant which should be mentioned is Lord v. Kelley, 223 F.Supp. 684 (D.Mass.1963), appeal dismissed 334 F.2d 742 (1st Cir. 1964).

The significant differences between Lord and the case at bar are: (1) in Lord the papers belonged to the movant whereas here the papers admittedly do *not* belong to the movant; (2) the papers were in the hands of a custodian accountant solely for the purpose of preparing tax returns whereas here the papers were regularly in De Risi's custody either as an officer or employee of, or bookkeeper for, the corporations; (3) in Lord, the custodian "yielded to compulsory process" (223 F.Supp. at 687) whereas here it is found as a fact that De Risi did not yield to compulsory process; and (4) in Lord, it was found that the custodian had no authority in any event to give consent whereas here he either had such authority or he and the District Attorney reasonably believed in good faith that he did have authority.

### 2.

The question of return of the property seized on August 22 and 24, 1959 is complicated by the fact, apparently not disputed or in any event incapable of serious dispute, that some of the property belongs to movant Birrell and some to others, namely, corporations with which he at one time was connected. The Trustees of Swan-Finch Oil Corporation and of Equitable Plan Company claim ownership of a large part of the property.

While any property belonging to movant will be returned to him it seems fair and reasonable and in the proper exercise of discretion to require him to bear the burden of establishing ownership of the property. Among other reasons, this is because (a) movant knows more about the property than anyone else and (b) he delayed more than five years in making the present motion.

The motion of defendant Birrell for the return of the property obtained by the District Attorney of New York County on July 24, 1959 (and now in the possession of the United States Attorney) and to suppress that property for use as evidence is denied.

That part of the motion of defendant Birrell which seeks the return of the property seized on August 22 and 24, 1959 (the part of the motion which sought its suppression for use as evidence having already been granted) is granted to the following extent only and otherwise denied:

a. the property will remain in the custody of the Clerk of this Court, subject to further order of this Court, as provided in the order of this Court made by Judge Palmieri under date of October 16, 1959 and filed on October 26, 1959;

b. any part or all of such property will be returned to defendant Birrell upon application to the Court based on the written agreement thereto of the United States Attorney, of the Trustee of Swan-Finch Oil Corporation, and of the Trustee of Equitable Plan Company;

c. any part or all of such property will be returned to defendant Birrell upon his establishing his ownership thereof to the satisfaction of the Court after hearing, notice of which shall be given to the United States Attorney, to the Trustee of Swan-Finch Oil Corporation and to the Trustee of Equitable Plan Company; and

d. if any copies are hereafter made of any of such property as permitted by the above order of this Court filed on October 26, 1959, one such copy shall be supplied to defendant Birrell at the expense of the party making the copies.

So ordered.