UNITED STATES of America, Plaintiff-Appellee,

v.

Joseph Lee NOLAN a/k/a "Jo Jo" Nolan, and Samuel F. Comeaux a/k/a "Freddie" Comeaux, Defendants-Appellants.

No. 27241.

United States Court of Appeals Fifth Circuit.

Dec. 29, 1969.

Guy Johnson, New Orleans, La., Robert L. Kleinpeter, Baton Rouge, La., for appellants.

Louis C. LaCour, U. S. Atty., Horace P. Rowley, Julian R. Murray, Jr., Asst. U. S. Attys., New Orleans, La., for appellee.

Before GOLDBERG, DYER and CARSWELL, Circuit Judges.

CARSWELL, Circuit Judge:

On this appeal, appellants, Nolan and Comeaux, contend that they were deprived of a fair trial because the trial judge denied their requests for discovery of extensive wiretap and electronic eavesdrop material until after trial; because the government failed to sustain its burden of establishing lack of taint; and because the trial judge failed to give instructions to the jury on the defense of entrapment. Having carefully considered each of appellants' contentions, we find no reversible error and affirm the conviction below.

Appellants Nolan and Comeaux, along with Samuel Graziano, were jointly indicted on three counts for violations of Title 18, United States Code, Section 224, pertaining to bribery of sporting events. Graziano pleaded guilty to all three counts and was sentenced to one year's imprisonment on each count, which terms were to run concurrently. Nolan and Comeaux pleaded not guilty and a jury trial followed. Both were found guilty by the jury and were respectively sentenced to four and three years for each count, such terms to run concurrently. Nolan was also fined $10,000.00.

Before their trial, appellants filed motions at three different times seeking discovery and inspection of all documents or tangible objects in the hands of the government, including any electronic or mechanical recordings. One such motion was withdrawn by appellants because of the government's assertion that it had no unlawfully obtained evidence in connection with this case. The other two motions were denied, the trial judge reserving to appellants the right to have a hearing on the admissibility of certain evidence after the trial.

A motion to suppress the use by the government as evidence any and all documents or tangible objects obtained as a direct result of illegal wiretaps or electronic surveillance was granted.

I.

Appellants' first specification of error requires a determination of when an examination and a hearing regarding the admissibility of allegedly illegally obtained wiretap evidence must occur. The recent case of Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L. Ed.2d 176 (1965), is relied upon by appellants to support their contention that they were denied a fair trial when certain tape recordings were not turned over to them until after the trial.

Analysis of the Alderman case convinces us that appellants' reliance is misplaced. That case held that surveillance records as to which any party has standing to object should be turned over to him without being screened *in camera* by the trial judge. The rationale for such holding was that

"Admittedly, there may be much learned from an electronic surveillance which ultimately contributes nothing to probative evidence. But winnowing this material from those items which might have made a substantial contribution to the case against a petitioner is a task which should not be entrusted wholly to the court in the first instance. It might be otherwise if the trial judge had only to place the transcript or other record of the surveillance alongside the record evidence and compare the two for textual or substantive similarities. Even that assignment would be difficult enough for the trial judge to perform unaided. But a good deal more is involved. An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more

intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances. Unavoidably, this is a matter of judgment, but in our view the task is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court to identify those records which might have contributed to the Government's case."

In the immediate case, the trial judge made no *in camera* inspection of the records before trial. Nor did the trial court deny the fact that defendants had a right to examine illegally obtained wiretap evidence, but simply determined that such examination should not take place until after trial. This determination was based upon the facts that the recordings in dispute comprised 42 reels of tape with over 90 hours of listening time, that the government had advised the court that there was no connection between the information contained on the tapes and evidence which they had used in their investigation or would use at the trial, and that a hearing on the purity of the government's testimony could well take more time than the trial itself.

There is nothing in the Alderman case which would lead us to conclude that there was an abuse of discretion or error on the part of the trial court when it determined that the examination and hearing should follow, rather than precede, the trial. Indeed, the Alderman case itself was remanded for a post-trial hearing. If it were true, as claimed by appellants, that Alderman expanded the rights of discovery as set out in Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), it would seem reasonable that the Supreme Court would have remanded the case for a new trial in lieu of remanding it for a post-trial hearing.

Although decided before the Alderman case, the reasoning of the District Court in the case of the United States v. Birrell, 269 F.Supp. 716 (S.D. N.Y.1967); aff'd 399 F.2d 343 (2nd Cir., 1968); rev'd on other grounds, 400 F.2d 93 (2nd Cir., 1968), is particularly applicable to the present case.

"In the Court's view, the question of the timing of a hearing on the issue of taint falls within the 'well-established range of judicial discretion' entrusted to federal judges 'in ruling upon preliminary questions of fact.' * * * there are occasions when circumstances demand a separate hearing before or after trial. * * * In the exercise of the Court's discretion, the primary desideratum should be the common interest of the Court and the litigants in a fair and expeditious trial." 269 F.Supp. at 726.

It cannot be claimed that any rights were prejudiced by the holding of a post-trial, in lieu of a pre-trial hearing. As the trial judge below observed,

"* * * if there is an acquittal, of course, then the question is moot and we don't have any worry; and everybody's rights have been preserved. If there is a conviction, then a hearing is held * * * to determine whether or not the Government's assertion is correct. If * * * correct, then, of course, everybody's rights have been preserved by letting the conviction stand. If * * * not correct, then, of course, everybody's rights have been preserved by the Court reversing the conviction."

## II.

Appellants' next contention on appeal is that the government, in the post-trial hearing, did not satisfy its burden of establishing the lack of wiretap or electronic eavesdrop taint. For a determination upon this issue, we can again turn to the Alderman case. Justice White relying upon Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), stated that when an illegal search has come to light, the United States has the ultimate burden of persuasion to show that its evi-

dence is untainted. But, at the same time, the accused must "prove that a substantial portion of the case against him was a fruit of the poisonous tree." 394 U.S. at 183, 89 S.Ct. at 972. This is where appellants' contention fails.

A review of the record of the post-trial hearing discloses that at no time did appellants show the court that information contained in the tape recordings was used against them in any manner, either in the prosecution of the case during the trial or in the pre-trial investigation. Appellants never even attempted to point out to the court just what portions of the tapes tainted the government's case. On the other hand, a United States Attorney and a special agent of the Federal Bureau of Investigation, both involved in the investigation and prosecution of the case against appellants, testified under oath that the recordings played no part in the investigation of the case or preparation for trial. After the court below carefully studied the ninety-two hours of tape recordings, it concluded that there was not "one scintilla of evidence in those tapes that could have in any way tainted the evidence produced by the Government during the trial of this case."

In light of the testimony adduced at the post-trial hearing on behalf of the government, as well as the lack of any showing whatsoever on appellants' part that a portion of the case against them was "a fruit of the poisonous tree", we are convinced that the trial court, having itself studied the recordings, did not err in its finding as to lack of taint.

### III.

Appellants' third point of error relating to the failure to give instructions to the jury regarding the defense of en-

trapment has no merit. The basis for the appellants' claim of entrapment is that one of the former football players, who had had several telephone conversations with Graziano, was cooperating with the FBI and permitted FBI agents to listen in on some of these conversations. There was no showing of any activity which could even remotely fall within the traditional definitions of entrapment. See Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413 (1932) and Hamilton v. United States, 221 F.2d 611, 614 (5th Cir.1955).

It is interesting to note also that defense counsel made no reference to the defense of entrapment in his closing statement to the jury. Furthermore, appellants did not request a charge on entrapment nor did they object to the court's charge to the jury upon grounds of omitting such an instruction on entrapment. Rule 30 of the Federal Rules of Criminal Procedure provides in part that

> "no party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

While this Court may, of course, notice errors to which no exception has been taken if the errors are prejudicial[1] or otherwise affect the integrity of judicial proceedings, Tomley v. United States, 250 F.2d 549, 551 (5th Cir., 1958), we are convinced that no such situation is presented here.

Upon a review of the entire record, we are satisfied that the appellants received a fair trial, and the judgments appealed from are therefore

Affirmed.

---

1. Rule 52(b) provides that "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."