210

UNITED STATES of America,
Plaintiff-Appellee,

v.

(ONE) (1) 1971 CHEVROLET COR-
VETTE AUTOMOBILE SERIAL NO.
194371S121113, Defendant,

The First National Bank of Miami,
Intervenor,

Hilda Landeo de la Fe, Intervenor-
Appellant.

No. 73-3373.

United States Court of Appeals,
Fifth Circuit.

June 26, 1974.

Alfred Feinberg, Legal Services of Greater Miami, Miami, Fla., for intervenor-appellant.

Robert N. Reynolds, Asst. U. S. Atty., Robert W. Rust, U. S. Atty., C. Wesley Currier, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

J. T. Haley, Miami, Fla., for First Nat. Bank.

Before BELL, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The court below ordered the automobile belonging to appellant-intervenor

Hilda Landeo forfeited for violation of 49 U.S.C. § 781(a)(3), which makes unlawful the use of a vehicle "to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article."[1] Landeo admitted participating in the illegal importation of cocaine, but challenges the court's conclusion that her automobile was used to "facilitate" the transaction. The record, which is substantially uncontradicted, discloses that the government failed to discharge its initial burden of showing probable cause to believe that the auto's use facilitated the crime. We reverse.

Upon her arrival at the Miami International Airport after a flight from Peru, Landeo was met by her husband; together they drove in a borrowed Cadillac to her father-in-law's apartment. Following a short visit, Landeo and her husband drove the Cadillac to their own apartment a few blocks away. Forty-five minutes later they exited their apartment and got into the Chevrolet Corvette that is the subject of this libel. They returned to the father-in-law's apartment, parked the Corvette, and departed in a Ford automobile belonging to the father-in-law. They then drove to the McAllister Hotel, where Landeo expected to rendezvous with an accomplice who had entered the country the day before with a quantity of cocaine. Unknown to Landeo, the accomplice had been apprehended at the airport after a search by government agents and was now cooperating with those agents in their effort to capture the rest of the conspirators. Consequently Landeo was arrested at the hotel. The district court found that contraband was never present in the defendant automobile.

The testimony of one of the government agents provided the sole attempt to elucidate the car switches. The following colloquy occurred on direct examination by the government:

Q Did Miss Landeo indicate to you why she changed vehicles on that particular day?

\* \* \* \* \* \*

The witness: Totally different comments were made by Miss Landeo from one that the car was not running right, to comments that they didn't want to use that car for anything because, you know, they didn't want to have any trouble with the car.

Q When you say trouble with the car, do you mean seizure? What kind of trouble?

A They talked about, you know, getting in trouble and having the car taken away. They told me at the time —"they" being both Miss Landeo and her husband—that they did not use the car in any narcotics transactions or things like this because they did not want to get in trouble, you know, and have the car taken away.

Q Was there any other reason she said she did not use it or wouldn't—

\* \* \* \* \* \*

The witness: She did mention that the car was not running right that day. I didn't go into any details.

Q Was there anything said of a Corvette which would—

A Well, they told me on occasions also that the car was conspicuous, you notice it a lot, but it never came up in conversation as to why it was not used that day.

Q How long have you been in the Drug Surveillance business, if I might put it that way?

A A little less than two years.

Q Sir, do you know whether using one car and dropping another is a standard means of shaking surveillance?

A We have encountered that before.

\* \* \* \* \* \*

Q Is it also standard procedure and a standard ploy in the drug community to drop one car off and pick up an-

---

1. Section 782, 49 U.S.C. § 782, provides for the forfeiture of any vehicle used in violation of Section 781, with exceptions not relevant here.

other to avoid this type of a legal problem, that is, seizure?

A We have encountered that problem also.

\* \* \* \* \* \*

From this testimony the district court found that the car was switched deliberately either to avoid surveillance or to avoid forfeiture or both, and concluded that "[i]n going from her apartment to the McAllister Hotel to get the cocaine or to get the individual with the cocaine, bringing the individual and the cocaine back to her apartment she used this automobile for some portion of that trip; and that is the sole basis of this forfeiture . . . ."

■ The burden of proof in a forfeiture proceeding is cast upon the claimant, provided that the government first shows probable cause for the institution of the suit. 49 U.S.C. § 784, 19 U.S.C. § 1615. The showing required of the government is satisfied when there is "a reasonable ground for belief of guilt," Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543 (1925), supported by "less than prima facie proof, but more than mere suspicion." United States v. One 1949 Pontiac Sedan, 194 F.2d 756, 759 (7th Cir. 1952); Bush v. United States, 389 F.2d 485, 489 (5th Cir. 1968). Landeo chose to present no evidence at the conclusion of the government's case. Our inquiry need extend no further than a determination whether the evidence established probable cause to believe that the defendant automobile "facilitated" the narcotics transaction.

■ "[W]hether any particular connection of a vehicle with contraband, where the contraband is not in the vehicle or in the possession of the occupant of the vehicle, constitutes facilitation, is a question of degree, which is in turn a question of fact not readily susceptible to generalization." United States v. One Dodge Coupe, 43 F.Supp. 60, 61 (S.D.N. Y.1942). It is commonly stated that any use of an automobile that "makes easy or less difficult" or "lessens the labor of" the handling of contraband constitutes facilitation within the meaning of section 781. E. g., United States v. One 1950 Buick Sedan, 231 F.2d 219 (3rd Cir. 1956). Evaluating the government's evidence in this light, we find the use made of the Corvette lacked the necessary nexus with the contraband transaction to bring it within the forfeiture provision.

■■ The district court apparently viewed facilitation as demonstrated in two ways: (1) the deliberate switch from the conspicuous Corvette to the more commonly seen Ford, and (2) the use of the Corvette for transportation on one leg of the trip from Landeo's apartment to the rendezvous point. While the changing of cars to evade peace officers who have suspects under surveillance and thus enable a clandestine transfer to take place would constitute facilitation, that is not what the government's proof established here. To the extent the car switch from Corvette to Ford may have been ambiguous in this respect, the government's agent resolved all doubt by disclosing that Landeo only wanted to avoid forfeiting the Corvette or perhaps to present a less attractive appearance at the hotel. The Corvette did not become involved in the criminal act by virtue of the decision *not* to use it.

The mere fact that the Corvette did perform a useful function in conveying Landeo and her husband during the day of the crime is not enough to support a finding of probable cause that it facilitated the ultimate transaction. The five block trip in the Corvette did serve to take the criminals to the car they had chosen for travel to the hotel; however, such use was entirely incidental to the success of the illegal transaction. It did not attain sufficient importance because, coincidentally, the transportation covered ground that had to be covered anyway. Such a remote, brief trip is too casual a use to facilitate this crime.

The decree of forfeiture is

Reversed.