**UNITED STATES of America, Plaintiff,**

v.

**U. S. CURRENCY AMOUNTING TO the SUM OF $20,294.00 MORE OR LESS, Defendant.**

**UNITED STATES of America,**

v.

**Carlos CARDONA, Defendant.**

**No. 80 CR 00061.**

United States District Court,
E. D. New York.

July 23, 1980.

Edward R. Korman, U. S. Atty., E.D. N.Y., Brooklyn, N. Y., for U. S.; Thomas G. Roth, Asst. U. S. Atty., Brooklyn, N. Y., Ben Wiles, Asst. U. S. Atty., of counsel.

Ira Leitel, New York City, for defendant Cardona.

BARTELS, District Judge.

Defendant Carlos Cardona moves pursuant to F.R.Cr.P. 41(e) for the return of $20,000 allegedly seized from his apartment by Drug Enforcement Administration ("DEA") agents on January 29, 1980, one day following his arrest on charges of narcotics trafficking. This motion was originally noticed on April 7, 1980, subsequent to Cardona's indictment but prior to trial. Following a hearing on motions to suppress by Cardona and his several codefendants, the government moved to dismiss the indictment against Cardona, which motion was granted on June 6, 1980. The currency here in issue was never offered by the government at the trial of the remaining codefendants, and the government apparently has no intention of doing so in any future prosecution.

At trial, the government promised to commence a civil action for forfeiture of the currency claimed by Cardona, relying upon Section 881 of Title 21 of the United States Code, which provides for the forfeiture of money "furnished or intended to be furnished by any person in exchange for a controlled substance" in violation of the federal narcotics laws. At a conference with the attorney for the government in open court held one week later on June 20, 1980, defendant Cardona, by his attorney, agreed to waive any administrative proceedings to which he might otherwise be entitled and to consolidate his Rule 41(e) motion with the government's forfeiture proceeding in order to obtain the earliest possible determination by the Court of the rightful owner of the currency. At the time of that conference, the government expressed no objection to this procedure, and it subsequently filed its civil *in rem* forfeiture action on June 25, 1980.

A hearing was held by the Court on the consolidated applications on July 14 and 15, 1980, at which time one witness was offered by the government and no evidence was presented by defendant Cardona, who did not appear and apparently could not be contacted even by his own counsel. Upon consideration of the briefs filed and the evidence adduced, the Court hereby renders the following opinion containing its findings of fact and conclusions of law.

## I. JURISDICTION

In view of the dispute as to the priority of the Court's jurisdiction over either application, it becomes necessary to note briefly the essential differences between a motion for return of property under F.R.Cr.P. 41(e)[1] and a forfeiture proceeding commenced pursuant to 21 U.S.C. § 881(a).[2] This area of the law is not with-

---

1. F.R.Cr.P. 41(e) provides:

   (e) Motion for Return of Property. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

2. Section 881(a)(6) of Title 21 of the United States Code provides:

   (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

   * * * * * *

   (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable

out confusion. The former provides a remedy for a defendant aggrieved by an illegal seizure who claims ownership of certain property,[3] whereas Section 881(a) provides a mechanism for forfeiture under certain circumstances by the government. In a Rule 41(e) proceeding, as on a motion to suppress, lawful possession must be established by a preponderance of the evidence, *see United States v. Birrell*, 243 F.Supp. 38, 41 (S.D.N.Y.1965); *United States v. Van Allen*, 28 F.R.D. 329, 341 (S.D.N.Y.1961); *United States v. Lyon*, 397 F.2d 505 (7th Cir.), *cert. denied*, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968); *United States v. Palmer*, 565 F.2d 1063 (9th Cir. 1977); in a proceeding under § 881(a), however, once the government establishes probable cause for forfeiture, the burden shifts to the claimant to absolve the property from culpability. *Ted's Motors, Inc. v. United States*, 217 F.2d 777, 780 (8th Cir. 1954); *United States v. One 1972 Toyota Mark II*, 505 F.2d 1162, 1165 (8th Cir. 1974); *Bramble v. Richardson*, 498 F.2d 968, 970 (10th Cir.), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); 19 U.S.C. § 1615. In a forfeiture proceeding, probable cause is something more than a mere suspicion and generally must be regarded as reasonable under all the circumstances. *United States v. One 1971 Chevrolet Corvette*, 496 F.2d 210, 212 (5th Cir. 1974); *United States v. One 1949 Pontiac Sedan*, 194 F.2d 756, 758 (7th Cir.), *cert. denied*, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952).

■ Although initially amenable to the consolidation of its § 881 proceeding with Cardona's Rule 41(e) motion, the government now challenges the Court's jurisdiction over the Rule 41(e) application because of the existence of a civil forfeiture proceeding commenced at the suggestion of the Court during the trial of the criminal action. In support of its position, the government relies principally upon *United States v. Rapp*, 539 F.2d 1156 (8th Cir. 1976), and *United States v. Fields*, 425 F.2d 883 (3d Cir. 1970), in which both courts of appeals held that the respective district courts had no jurisdiction under Rule 41(e) to order the return of property under the particular circumstances presented.

Neither decision is controlling here, however. In *Rapp*, the Eighth Circuit Court of Appeals noted specifically that the defendant's motion under Rule 41(e) "was not brought prior to indictment or institution of the forfeiture process but was brought subsequent." 539 F.2d at 1161. Unlike that case where the property in question had been seized for the sole purpose of forfeiture and had already been forfeited at the time the motion was made, defendant Cardona made his motion several months before trial and the government made no effort to seek forfeiture until the Court suggested at trial that it do so. In *Fields*, the Third Circuit Court of Appeals emphasized that the district court had ignored the civil forfeiture procedures and in a criminal proceeding had entered an order directing the return of property to a party not even

---

to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

3. In this case, the question of lawful possession of the currency, rather than the legality of the seizure, is most important. Although defendant Cardona contends that the search and seizures in question were unlawful, the Advisory Notes to Rule 41(e) provide that a district judge "does not have to decide the legality of the seizure in cases involving contraband which,

even if seized illegally, is not to be returned." 18 U.S.C.A., F.R.Cr.P. 41, Advisory Committee Notes, at 485. Other courts have held that the legality of a search is relevant in any case—whether or not involving contraband—only with respect to the time at which the property must be returned. Thus, if property has evidentiary value and it was legally seized, it need not be returned until its evidentiary value has been exhausted; on the other hand, if illegally seized, the property must be returned immediately, regardless of its potential evidentiary value. *See United States v. Wilson*, 540 F.2d 1100, 1103–04 (D.C.Cir.1976); *United States v. Palmer*, 565 F.2d 1063, 1064 (9th Cir. 1977); *American Law Institute Model Code of Pre-Arraignment Procedure*, § SS 280.3 (1975).

before the court. 425 F.2d at 885. Cardona, on the other hand, was indicted and was being prosecuted at the time he moved for return of the currency, and the charges were not dismissed against him until the eve of trial, after a lengthy suppression hearing.

We find more persuasive the view that a district court has both the jurisdiction and the duty to return seized property to a defendant lawfully entitled to possession once the government has no further evidentiary need for it. *United States v. Rangel*, 608 F.2d 120, 121 (5th Cir. 1979); *United States v. Wilson*, 176 U.S.App.D.C. 321, 540 F.2d 1100, 1103–04 (1976); *United States v. Ortega*, 450 F.Supp. 211, 212 (S.D.N.Y. 1978); *United States v. Totaro*, 468 F.Supp. 1045, 1047–48 (D.Md.1979); *see also United States v. Farrell*, 606 F.2d 1341, 1343 (D.C. Cir.1979); *United States v. Palmer*, 565 F.2d at 1064; *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978). In *Wilson*, Judge MacKinnon, for the panel, explained:

> Property which is seized in a criminal proceeding . . . may be ultimately disposed of by the court in that proceeding or in a subsequent civil action. It makes for an economy of judicial effort to have the matter disposed of in the criminal proceeding by the judge that tried the case. * * * A claim by the owner for the return of his property cannot be successfully resisted by asserting that the property is *subject* to forfeiture. If the property is subject to forfeiture, appropriate proceedings should be started expeditiously.
>
> [T]he Government argues that adequate civil remedies exist for appellant's relief. That is true. He could also bring a civil action, but, as we just noted, that neither discharges the district court's duties nor disturbs its jurisdiction.

540 F.2d at 1104. This analysis is equally applicable here. Accordingly, we conclude that the institution by the government of forfeiture proceedings with respect to the $20,000 allegedly seized from defendant Cardona's apartment does not eliminate either this Court's jurisdiction or responsibility to consider his pre-existing and timely motion for return of that property under Rule 41(e) of the F.R.Cr.P.

■ In this case, it became apparent that regardless of the outcome of the Rule 41(e) proceeding the government would seek a forfeiture of the currency claimed by Cardona and that a final determination of lawful possession could not be made until the government had had an opportunity to show probable cause for forfeiture. In the interest of judicial economy, therefore, the Court ruled prior to the hearing that the § 881 procedure would be utilized initially to determine the question of forfeiture before proceeding under Rule 41. Although absent the stipulation by the parties here to consolidate the forfeiture action and the Rule 41(e) motion the Court would have been inclined to stay consideration of the motion pending resolution of the forfeiture proceeding, the consolidation rendered such a stay unnecessary.

## II. *FACTS*

The facts were elicited solely from the testimony of United States Immigration and Naturalization Service ("INS") Officer Rocco Morelli and the exhibits introduced through him. He testified that he has been serving as a criminal investigator specializing in Colombian narcotics activities for approximately six years. On January 28, 1980, he was directed to proceed to DEA headquarters on 57th Street in Manhattan, where he arrived at 10:50 p. m. Ten minutes later, after being informed that one Carlos Cardona had been arrested on a narcotics charge and was possibly an illegal alien, Morelli questioned Cardona in Spanish concerning his name, country of origin, his property, if any, in the United States, and his place, manner, and date of entry. Cardona responded that he had entered the country in 1979 near San Ysidro, California after paying a smuggler to "pass him through" the border. He explained that he was self-employed as a beer vendor in the park. Morelli then informed Cardona of his

rights based on INS Form I–214,[4] after which Cardona himself read and signed the form. After obtaining two other signed documents from Cardona—INS Forms I–215B and I–263A—Morelli searched him and found nothing. Throughout the duration of the interview, Cardona appeared to Morelli to be cool, collected, and in control, and he acknowledged his understanding of his rights.

In response to questioning, Cardona stated that he had a passport in his hotel room in Queens, the address of which he could not recall. After admitting that he would recognize the hotel if he were in the vicinity, he agreed to take a ride to find the place where he lived. Morelli then received a phone call from Detective Kenneth Robinson of the New York City Police Department, who informed him that the superintendent of an apartment building at 23–35 Broadway in Astoria, Queens had recognized Cardona from a picture as a person whom he had seen in apartment 3F.

Morelli, Cardona, and two other agents then drove to 23–35 Broadway in Queens, where they were joined by four other agents, including Detective Robinson and INS Investigator Victor Rita. As they exited from the vehicle, Cardona motioned toward the apartment and stated that he did not live there. Cardona at all times remained calm and collected as he accompanied the agents walking toward the apartment building.

They entered the building at approximately 12:20 a. m., took two elevators to the third floor, and walked to the door of apartment 3F. Cardona again stated that he did not live in that apartment. The agents then positioned him in front of the peephole in the door, and Officer Morelli rang the bell. After quickly looking through the peephole, an individual inside the apartment—later identified as Jose Valdez-Araque—immediately opened the door. As INS Investigator Rita identified himself, Officer Morelli looked past Valdez into the apartment and observed a man, later identified as Elkin Escobar-Cano, move suddenly from a reclining position on a mattress and reach for something outside Morelli's view. Without hesitation, Morelli pushed into the apartment, forcing Cardona and Rita in ahead of him, and shouted, "Freeze." He then moved Cano away from the mattress and found under it a loaded .357 Magnum automatic revolver. Morelli arrested Cano and handcuffed him.

Meanwhile, the other agents had entered the apartment, discovered in one of the bedrooms a woman who identified herself as Gloria Blum-Bedoya, and arrested both her and Valdez upon their admission that they were illegal aliens. On a couch located next to the mattress on which Cano had been lying, Investigator Rita seized and searched Cano's clothes and discovered in his jacket pocket 4.73 grams of cocaine. Visible in plain view on the top shelf of an open closet in the same room was the handle of a .22 caliber Bauer automatic pistol loaded with hollow point bullets.

To ensure that other aliens were not hiding in the apartment, Detective Robinson and Investigator Rita looked quickly in each of the other rooms. In an open closet in the kitchen, Rita found contained in two paper bags the $20,000 in United States currency which are the subject of this proceeding. When the money was discovered, Cardona, seated in a chair in the entrance hall, stated that he knew no one in the apartment and that the money did not belong to him.

---

4. Immigration and Naturalization Service ("INS") form I–214 contains a statement of rights in Spanish. Those rights, as they appear in English on INS form I–215B, are as follows:

You have the right to remain silent.
Anything you say can be used against you in court, or in any immigration or administrative proceeding.
You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
If you decide to answer any questions now without a lawyer present, you will still have the right to stop answering at any time.
You also have the right to stop answering at any time until you talk to a lawyer.

In a second bedroom, Robinson found on the top shelf of another open closet more cocaine, a scale, and 36 empty bottles of Inositol, a substance used in cutting cocaine. Also found in a hall closet was a passport in the name of Javier Correa Castrillon which contained Cardona's photograph.

As they prepared to leave the apartment, Cardona asked and received permission to get his coat from the hall closet, shrugging off his prior denial of residence.

## III. PROBABLE CAUSE FOR FORFEITURE

Defendant Cardona challenges the sufficiency of the government's evidence to establish probable cause for forfeiture—in other words, probable cause that the currency here involved was "furnished or intended to be furnished by any person in exchange for a controlled substance." 21 U.S.C. § 881(a)(6). More precisely, he asserts that the search of apartment 3F at 23–35 Broadway in Astoria, Queens, described by Officer Morelli, was unlawful and, therefore, that all evidence derived therefrom is inadmissible in a forfeiture proceeding.

■ While it is true that because the exclusionary rule has been held applicable to forfeiture proceedings probable cause for forfeiture cannot be predicated upon tainted evidence, *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), it is a well established principle that the constitutionality of a search or seizure may be challenged only by one able to establish that his or her personal constitutional rights have been violated. *United States v. Payner*, —— U.S. ——, ——, 100 S.Ct. 2439, 2444, 64 L.Ed.2d 468 (1980); *Rakas v. Illinois*, 439 U.S. 128, 130–31 n.1, 99 S.Ct. 421, 423 n.1, 58 L.Ed.2d 387 (1978); *Brown v. United States*, 411 U.S. 223, 229–30, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973); *Simmons v. United States*, 390 U.S. 377, 391, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968). In this case, the evidence belies Cardona's claim to standing. Although in an affidavit submitted in support of his Rule 41(e) motion he claimed lawful possession, Cardona repeatedly told Officer Morelli that he did not live in apartment 3F at 23–35 Broadway in Astoria, that he did not know the persons arrested there in the early morning hours of January 29, 1980, and that the cash which is the subject of this proceeding did not belong to him. Cardona offered no evidence to support a claim by him to standing; indeed, by his failure to appear he demonstrated an apparent disinterest in the currency which in our view, undercuts still further his present claim to the money. Although his counsel asserted that keys seized from Cardona at the time of his arrest could be connected to apartment 3F, no such connection was ever made, either at the forfeiture hearing or the suppression hearing several months ago. Moreover, in view of Cardona's own statements to Morelli, we are not persuaded by the fact that Cardona may have had a coat in the hall closet or that the building superintendent had seen him in the apartment on two occasions during the summer of 1979. Cardona affirmatively denied both residence in apartment 3F and ownership of the money.

We conclude, therefore, that Cardona has no standing to challenge the legality of the search of apartment 3F at 23–35 Broadway in Astoria, Queens on January 29, 1980 and that the evidence is admissible.

■ Having concluded that the fruits of the search need not be suppressed, we find inescapable the existence of probable cause for forfeiture of the $20,000 in currency. Its discovery in two paper bags in an apartment in which cocaine, guns, ammunition, a scale, numerous empty Inositol bottles, a falsified passport, and several illegal aliens were also found easily satisfies the government's burden of proof in a forfeiture proceeding. Defendant Cardona, on the other hand, has failed completely to rebut the government's showing, and, accordingly, we hold that the currency be forfeited to the government. Because establishment of lawful possession of the claimed property is essential to the success of a motion pursuant to Rule 41(e) (*see* 18 U.S.C.A., F.R.Cr.P. 41, Advisory Committee

Notes, at 485), our determination that the $20,000[5] must be forfeited pursuant to 21 U.S.C. § 881(a)(6) as derivative contraband mandates our further holding that Cardona's Rule 41(e) motion be, and hereby is, denied.

SO ORDERED.

---

**5.** Although we have referred throughout this opinion to an amount of $20,000, the precise sum of United States currency seized and ordered to be forfeited to the government may be slightly larger. A judgment of forfeiture specifying the exact amount shall be entered in accordance with this opinion.